## J. HENDERSON v. THE STATE.

1. EVIDENCE.—The credit of a witness may be impeached by proof that he has made statements out of court contrary to his testimony at the trial; but it is only as to matters relevant to the issue that he can be thus contradicted.

2. SAME.—In laying the predicate for such contradictory evidence, it is generally necessary, if the statements were verbal, to ask the witness specifically as to the time, place, and person involved in the supposed contradiction. General questions, whether he has ever said so, or whether he has always told the same story, and the like, are not competent.

3. SAME.—In thus impeaching a witness the object is, not to disprove his statements under oath, but to discredit him as a witness.

4. SAME—CHARGE OF THE COURT.—In a case like the present, where the verdict depended on the evidence of the prosecuting witness alone, and the defense, after laying the proper predicate, proved that on several occasions she had made statements materially conflicting with her testimony at the trial, the court should, as part of the law applicable to the case, have given in charge to the jury the legal principles controlling the application and effect of the impeaching evidence.

5. EMBEZZLEMENT—CHARGE OF THE COURT.—On trial of the accused for embezzlement of money intrusted to him by the prosecutrix, he introduced evidence tending to prove that the prosecutrix authorized him to use it, and he asked the court to instruct the jury to acquit him if they believed from the evidence that he was so authorized. *Held*, that the refusal of the instruction was error.

6. NEW TRIAL.— When newly-discovered evidence is merely cumulative of the evidence adduced at the trial, it does not entitle the party to a new trial.

APPEAL from the District Court of Jack. Tried below before the Hon. J. R. FLEMING.

The case is clearly stated in the opinion of the court.

*Ball & Roach*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State. We respectfully refer the court to the case of *Block* v. *The State*, decided February 18, 1876.

The statute under which this prosecution was had was amended by the fifteenth legislature, to take effect November 21, 1876, which amendment seems to be made to cover the defect pointed out by the court in *Block* v. *The State.*

Although the indictment in this case does not charge that the money so embezzled came into the hands of the agent by virtue of his said agency or employment, or that he so converted it to his own use with the intent, etc., yet in *Riley* v. *The State*, 32 Texas, 763, it was held that the facts of the case raised a presumption of the guilt of the accused, and the court quoted approvingly Article 2491, Paschal's Digest.

Under the rule in *Wise* v. *The State*, 41 Texas, 139, this court might hold the indictment under consideration sufficient. Take the averment that James Henderson was then and there the agent of Lucy Williams, and that he unlawfully and fraudulently converted to his own use the sum of $400, the property of the said Lucy, which said money the said Henderson then and there held as the agent of the said Lucy, which conversion was without the consent of the owner of the same, etc., and it is submitted that the indictment sufficiently shows the agency and the fraudulent conversion.

But we further refer the court to the following cases, decided by our own courts, upon the crime of embezzlement: *Gibbs* v. *The State*, 41 Texas, 492; *Wise* v. *The State*, 41 Texas, 139; *Peacock* v. *The State*, 36 Texas, 647; *The State* v. *Brooks*, 42 Texas, 62; and *The State* v. *Johnson*, 21 Texas, 775. And the following from the courts of other states: 31 Cal. 108; 8 Cal. 42; 9 Cal. 313; 6 Mass. (Gray) 17.

We do not feel called upon to notice any of the errors assigned by counsel, and we submit that the facts of the case warranted the conviction, and that the court below did not err in its charge.

WINKLER, J.   The appellant was charged by indictment, as follows : " On the first day of July, A. D. 1874, in the county of Jack, James Henderson, who was then and there the agent of Lucy Williams, did then and there unlawfully and fraudulently convert to his own use the sum of four hundred dollars in United States paper currency, the same being current as money ; the same being then and there the corporeal personal property of said Lucy Williams, and which said money he, the said James Henderson, then and there had and held as the agent of the said Lucy Williams, and he, the said James Henderson, did then and there unlawfully and fraudulently convert said four hundred dollars to his, the said James Henderson's, own use, without the consent of said Lucy Williams, the owner of the same ; contrary to the form of the statute in such cases made and provided, against," etc.

The evidence shows about this state of the case : During the years 1871, 1872, 1873, 1874, and up to the spring of the year 1875, the accused and Lucy Williams, whose funds it is alleged were embezzled by the defendant, were living together in the town of Jacksboro ; the former carrying on a barber-shop, and the latter, so far as the testimony shows, engaged in keeping a boarding-house and taking in washing.   Agreeably to the evidence of Lucy Williams, the defendant was living at her house and boarding with her, and during the year 1871 he paid her $5 per week for board, and afterwards, during the years 1872, 1873, and 1874, the defendant furnished provisions, and she would cook them up ; that some time in the spring of the year 1875 she told the defendant that she wanted her money, when he told her that he had withdrawn it from Mr. Eastburn's, and deposited it in the bank of Wheeler & Wilson, at Dallas, Texas, through Harrel & Knox, for two months, at 2 per cent. interest per month, and that he could not get it until that time expired ; and when that time was out

she again demanded of the defendant her money, when he stated that he had sent for it, and that as soon as it came she should have it; that she then went to Harrel & Knox, merchants at Jacksboro, and learned from them that the defendant had sent no money to Dallas through them, and that her suspicion was then first aroused of defendant's dishonesty with her.

On cross-examination this witness stated that she had made the money given to the defendant to deposit for her by washing and keeping boarding-house; that she gave the defendant, in the year 1871, $120, in the year 1872, $112, in the year 1873, $108, and in the year 1874 the sum of $75, and that she did loan, on two different occasions, the sum of $60 to the defendant.   This witness states that, during the years 1871, 1872, 1873, and 1874 she had given to the defendant the sum of $400, United States currency, to deposit for her at Mr. Eastburn's store, and that the defendant had accepted the money from her, as her agent, for the purpose of depositing the same for her and in her name; that she could not read and write, and that, when she gave the defendant money to deposit for her, he would return and give her a certificate of deposit from Mr. Eastburn, as he called it, but that she did not know what it was; that she did not at any time give said defendant any authority to use any of said $400.

During the cross-examination of this witness, Lucy Williams, sundry questions were propounded to her, in order, doubtless, to lay the proper foundation for impeaching her testimony by proving by other persons that she had made statements out of court differing from her testimony as given on the trial, and it seems that the proper predicate was laid by calling her attention to the time and place, and the persons to whom, such statements were made, as well as to what these statements were, by proper questions which were put to and answered by the witness in the negative.

It would be profitless to set out the testimony at large. Suffice it to say that several witnesses were introduced whose testimony tended, in our opinion, to contradict the statements of the main witness, as given by her on the trial, and tending to show an improper motive actuating the witness to secure the conviction of the accused.

The rules of law bearing upon this subject are as follows:

The credit of a witness may be impeached by proof that the witness has made statements out of court contrary to what he has testified at the trial; but it is only in such matters as are relevant to the issue that the witness can be contradicted. And before this can be done it is generally held necessary, in the case of verbal statements, first to ask him as to time and place and person involved in the supposed contradiction. It is not enough to ask him the general question whether he has ever said so and so, or whether he has always told the same story, because it may frequently happen that upon a general question he may not remember whether he has so said; whereas, when his attention is challenged to particular circumstances and occasions, he may recollect and explain what he has previously said. 1 Greenl. on Ev. (6th ed.), sec. 462, and note 1, p. 593.

Before the evidence of verbal contradictory statements can be received in evidence against a witness it will be necessary, in the first instance, to prepare the way for its reception by cross-examining him as to the supposed contradictions which are afterwards to be brought forward against him. 2 Phillips on Ev. 959; *Weir* v. *McGee*, 25 Texas (Supp.), 32. The object of thus impeaching a witness is not with the view of contradicting his statements on oath, but for the purpose of discrediting him as a corrupt witness, or as one who would corrupt other witnesses. 2 Phillips on Ev. 961.

In so far as we can discover from the record, these rules were observed on the trial below, so far as preparing the

way for receiving his testimony and the introduction of witnesses were concerned. Yet we are of the opinion the subject was of such vital importance to the rights of the defendant as to have required of the judge an instruction to the jury as to the nature and application of the evidence on this proposition, as a part of the law applicable to the case, which it appears he did not do.

And we are of opinion, further, that under the evidence the defendant was entitled to the 1st paragraph in the special charge asked by the defendant and refused by the judge, as follows: " That if the jury believe from the evidence that, at the different days and dates when Lucy Williams turned over the money charged to have been embezzled by the defendant to defendant, James Henderson, if at all, she gave him the privilege to use it or deposit it as he might deem best for her interest, then and in that case you will find him not guilty."

We are not fully satisfied that, from a view of the whole testimony and the charge of the court, the evidence is sufficient to support the verdict and judgment of conviction against the defendant, and we think that the court erred in refusing a new trial on the 3d ground set out in defendant's motion for new trial, to wit: " Because the verdict of the jury is contrary to the law and the evidence."

There was no error in the ruling of the court in refusing a new trial on the ground of newly-discovered evidence, as set out in the motion and accompanying affidavits for new trial, for the reason that the alleged newly-discovered evidence was but cumulative of other evidence used on the trial.

But, for the errors above set forth, the judgment of the district court of Jack county in this case is reversed and the cause remanded.

Inasmuch as we have felt constrained to reverse and remand this cause, we call attention to the indictment, as to

whether it is not defective in failing to charge the value of the currency alleged to have been appropriated by the defendant, and whether it should not state more specifically that the money came into the hands of the accused in the regular course of his agency; and, also, whether it was at the time an indictable offense to embezzle United States currency, under the rule laid down in *Block* v. *The State,* 44 Texas, 620.

*Reversed and remanded.*